UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD ODEAN TOLL,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:16-CV-705

HON. PAUL L. MALONEY

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

### STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty–eight years of age on the date of the ALJ's decision. (PageID.49, 127, 137.) He completed high school, attended two years of college, and was previously employed in a number of positions including work as a janitor, truck driver (delivery), lawn service worker, technical support specialist, electrical panel assembler and wirer, and extrusion press operator I. (PageID.113–116, 255.) Plaintiff applied for benefits on April 23, 2013, alleging that he had been

disabled since July 17, 2006, due to spine injuries, spine arthritis spurs, spine stenosis, high BMI, degenerative disc disease, loss of feeling in the legs, moderate to severe hearing loss, an inability to get out of bed and dressed without assistance, and a need for a cane when walking. (PageID.127–128, 137–138, 220–231.) These applications were denied on September 24, 2013, after which time Plaintiff requested a hearing before an ALJ. (PageID.150–159.) On April 24, 2015, Plaintiff appeared with his counsel before ALJ Laurie Wardell for an administrative hearing with testimony offered by Plaintiff and a vocational expert (VE). (PageID.70–125.) On June 2, 2015, the ALJ issued her written decision, concluding that Plaintiff was not disabled. (PageID.49–68.) On April 6, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.33–38.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined Plaintiff's claim failed at step five. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (PageID.54.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) obesity; and (3) hearing loss. (PageID.54–55.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.55–56.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with some additional limitations. More specifically, he is able to lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for a total of about two hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday. He is limited to no more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; he cannot balance on wet or uneven surfaces or climb ladders, ropes, or scaffolds; and he needs to avoid moderate exposure to

>vibration and hazards (e.g., unprotected heights and moving mechanical parts). Finally, he is able to perform simple and routine tasks that do not require a production-rate pace.

(PageID.56.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform his past relevant work. (PageID.61.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform work as a surveillance system monitor (1,600 regional and 42,000 national positions) and inspector (1,800 regional and 58,000 national positions). (PageID.116–119.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.62.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from July 17, 2006, the alleged onset date, through June 2, 2015, the date of decision. (PageID.62–63.)

## DISCUSSION

Plaintiff asserts that the ALJ's decision is unsupported by substantial evidence for two reasons: the ALJ's analysis of Dr. David Collins' opinion fails to comply with the treating physician rule, and the ALJ improperly discounted Plaintiff's credibility. (PageID.593.) The Court notes that to the extent Plaintiff has raised additional arguments independent of those stated here, and addressed below, they have been waived. Specifically, Plaintiff argues the ALJ should have determined that he required the use of a cane to ambulate, as found by Dr. Jacobson, a consultative examiner. (PageID.603.) The reasons why this argument has been waived are two-fold. First, it was not included in his Statement of Errors, as specifically required by the Court in its August 12, 2016, notice to the parties. (PageID.585.) That notice cautioned that failure to include an issue in the

5

Statement of Errors constitutes a waiver of that issue. Second, it is waived because the contention is undeveloped and unaccompanied by any meaningful argument. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996); *accord Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) ("[P]laintiff develops no argument to support a remand, and thus the request is waived."). Accordingly, the Court will address the two arguments waived in Plaintiff's Statement of Errors.

### 1. The ALJ's Analysis of Dr. Collins' Opinion.

On May 20, 2014, Dr. David Collins completed a two-page RFC questionnaire containing his opinion regarding Plaintiff's limitations. Dr. Collins began by noting he had treated Plaintiff since March 2013. Plaintiff was diagnosed with chronic back pain due to degenerative disc disease, and had a poor prognosis. (PageID.524.) Dr. Collins proceeded to indicate that Plaintiff was much more limited than as found by the ALJ. For example, he stated that Plaintiff could only sit for forty-five minutes and stand or walk for fifteen at any one time. In total, Plaintiff could only sit for four hours and stand or walk for two hours in an eight-hour workday. (PageID.524.) Plaintiff would need to be able to shift positions at will, and take four or more unscheduled breaks over the course of the workday. (PageID.524.) Plaintiff could only lift and carry less than ten pound weights. Were he to work, Dr. Collins believed Plaintiff could be expected to be absent three or four times a month. (PageID.525.) Ultimately, however, Dr. Collins concluded that Plaintiff was not physically

capable of performing full time work on a sustained basis. (PageID.525.) The ALJ gave the opinion only "little weight." Plaintiff claims the ALJ should have given the opinion controlling weight pursuant to the treating physician doctrine.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and

the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

The Commissioner contends that this opinion is not subject to the treating physician rule. She notes that prior to rendering his opinion in May 2014, Dr. Collins had only examined Plaintiff on three occasions in March, April, and June of 2013. Furthermore, one of those visits had nothing to do with Plaintiff's back pain. (PageID.618.) The Commissioner depends, in part, on the sixth circuit case *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997 (6th Cir. 2011), which noted that "it is questionable whether a physician who examines a patient only three times over a four-month period is a treating source–as opposed to nontreating (but examining) source." *Id.* at 1000 n.3. The Commissioner also argues that Dr. Collins' opinion is patently deficient. She points out that the opinion consists of little more than a "check-the-box opinion that is entirely unsupported." (PageID.619.) While admitting that Dr. Collins supplied a diagnosis of chronic pain due to degenerative disc disease, the Commissioner claims that such does not elevate the worksheet to a well-supported opinion. (PageID.619) (citing *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474–475 (6th Cir. 2016); *White v. Colvin*, No. 14-11492, 2015 WL 7307973, at *6 (E.D. Mich. Nov. 20, 2015)). Plaintiff's brief appears to assume Dr. Collins qualifies as a treating physician and does not address the arguments raised by the Commissioner. Plaintiff also has not filed a reply brief. The Court finds the Commissioner has made a compelling argument why Dr. Collins' opinion is not

subject to the treating physician rule. Even assuming that, at the time he rendered his opinion, Dr. Collins qualified as a treating physician, the opinion is deficient. While the worksheet does contain a diagnosis of degenerative disc disease and a note that Plaintiff experiences sedation and dizziness as a side effect of his medications, it is lacking in any explanation of how Plaintiff's diagnoses impose these severe restrictions on his ability to perform work. As such, even if the ALJ failed to provide good reasons for assigning less than controlling weight to the opinion, such error is harmless. *See Hernandez*, 644 F. App'x at 474–475. In that light, the ALJ's analysis of the opinion easily passes muster. She noted, for example, that the opinion was inconsistent with the record as well as the testimony of Plaintiff that he could lift about ten pounds. (PageID.60.) In sum, the Court finds no error here. Plaintiff's first claim of error is denied.

### 2. Plaintiff's Credibility.

At the administrative hearing, Plaintiff testified that he was impaired to an extent far greater than that recognized by the ALJ. He reported being unable to walk for more than 45 minutes at a time and only being able to sit 15-20 minutes before needing to get up again. (PageID.93.) He rated his back pain at a 5 on a scale of 1-10. (PageID.95.) He used a cane, but still had issues with falling because of numbness in his lower extremities. (PageID.104.) He testified he slept through much of the day, that he had a decreased ability to focus, and that his memory had recently become worse (PageID.110–111.) The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not fully credible for the following reasons:

> First, the claimant has been able to perform a considerable number of activities of daily living during the relevant period of alleged disability, independently maintaining his personal hygiene, preparing meals, caring for pets, doing dishes, dusting, vacuuming, fishing, mowing his law, shopping in stores, driving, manage his finances, reading, watching television, and using a computer. Although not

> conclusive proof that he is able to sustain full-time work, his ability to perform these activities on a regular basis must be considered–especially in light of his complaints of disabling pain and concentration difficulties–and it weighs against the overall credibility of his allegations.
>
> Second, despite his allegation of disability since July 2006, no treating or examining physician found the claimant to be disabled or even limited to an extent greater than that outlined in his RFC before May 2014, and, as noted above, that opinion from Dr. Collins is unsupported by the objective medical records. Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of greater restrictions placed on him by a treating doctor during the first six years of the alleged disability period, yet a review of the record reveals no such restrictions.
>
> Third, although the claimant has received treatment for the allegedly disabling impairments, the medical records show that it has been essentially routine and conservative in nature. According to the record, he has participated in physical therapy, attempted aquatherapy, used a TENS unit, and taken a number of medications for pain and depression, but he has not required any surgery; he has not had any extended hospital stays or an excessive number of emergency room visits; there is no documentation of any attempts at chiropractic manipulation, he did not receive any treatment from a professional mental health care provider; and there is no documentation of any treatment whatsoever between February 2007 and April 2011.
>
> Although it is reasonable to believe that he has experienced at least some of the symptoms he has described, these factors do not support his allegations that his impairments are so severe as to cause him to be unable to perform any work-related activities.

(PageID.57, 60–61.) Plaintiff claims the ALJ's determination on this point is not supported by substantial evidence. The Court agrees.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social

Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported

11

by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

A review of the ALJ's three reasons for discounting Plaintiff's credibility–his daily activities, a lack of restrictions offered by treating and examining physicians, and conservative treatment–against the evidence of record leads this Court to determine the ALJ's decision regarding Plaintiff's credibility is not supported by substantial evidence.

The ALJ did not reference any records when discussing Plaintiff's activities of daily living in the context of his credibility, but in discussing those at step two, the ALJ referenced Plaintiff's function report and hearing testimony, as well as two medical records. (PageID.55.) A review of those records does not demonstrate Plaintiff is as capable as the ALJ found. For example, while a consultative examiner did find that Plaintiff "generally" was independent with activities of daily living, including dressing and feeding himself, the examiner also found Plaintiff would occasionally need assistance with bathing and getting up off the toilet. (PageID.515.) On his function report Plaintiff also reported needing assistance when getting dressed. He could mow grass "on occasion." (PageID.287.) While he reported being able to fix meals and feed, water, and walk family pets, he noted his family would help him when his back pain was too severe. (PageID.287.) Even then, he reported he prepared meals only a couple times a week. He was no longer able to cook full course meals as he could not stand for that long. (PageID.288.) He needed reminders from his wife or daughter to take medication. (PageID.288.) He could do dishes, mowing, and dusting twice

a week, but needed verbal encouragement and physical help in lifting, carrying, pushing, pulling, and tugging. (PageID.288.) While he could go out, drive, and go shopping, he testified he used electric carts when shopping, and could not go up and down every aisle. (PageID.102, 289) He could fish, but with assistance. (PageID.290.) He could use a computer tablet to communicate with friends and family, but only for a half hour before needing to get up, as he couldn't sit still. (PageID.103.) In sum, the record does not support the ALJ's determination that Plaintiff is capable of daily activities to the extent she claimed.

Moreover, the ALJ is simply incorrect that no treating or examining physician found Plaintiff to be limited to an extent greater than that outlined in his RFC before May 2014. On March 19, 2010, Dr. Michael Jacobson, a consultative examiner, indicated that Plaintiff "does require the use of a cane for distances over five feet for strength and stability, due to the patient's right-sided limp." (PageID.380.) The Commissioner's argument that the VE testified Plaintiff would still be capable of performing work with a cane is beside the point. (PageID.626.) Here, the ALJ discounted Plaintiff's credibility based on the fact that no physician had offered greater limitations than that contained in the RFC prior to Dr. Collin's opinion. The ALJ was incorrect in making this assertion.

Finally, Plaintiff contends the ALJ erred in describing his treatment as conservative, and in noting a gap in his treatment without considering his ability to afford such treatment. It appears Plaintiff's course of treatment has been more extensive than the ALJ makes it appear. In addition to the physical therapy, aquatherapy, use of a TENS unit, and medications, Plaintiff has received several radio frequency nerotomy treatments from Dr. Kevin Drew, a fact that the ALJ makes only passing reference to earlier in her decision. But even assuming such still qualifies as conservative treatment, the ALJ erred by finding Plaintiff was not fully credible, in part because he

had not received treatment between February 2007 and April 2011. In doing so, the ALJ determined that Plaintiff's lack of treatment suggested that his symptoms were less severe than alleged. As Dr. Drew indicated in April 2011, however, he had not seen Plaintiff since 2007 due to insurance issues, and he was seeing Plaintiff then because he was back on Medicaid. (PageID.396.)

SR 96–7p prohibits an ALJ from drawing inferences about a claimant's failure to obtain medical treatment for alleged symptoms without first considering an explanation for that failure:

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility. For example:
> . . .
> The individual may be unable to afford treatment and may not have access to free or low-cost medical services.

SSR 96–7p, 1996 WL 374186 at *7–8 (July 2, 1996). Here, the ALJ's decision did not address the numerous records from Dr. Drew which provided an explanation for the treatment gap.

In sum, based on this record, the ALJ's credibility determination is not supported by substantial evidence. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Plaintiff's credibility

with respect both to his daily activities and his treatment.

### 3. Remand is Appropriate.

As detailed herein, the ALJ's conclusion that Plaintiff was not disabled is not supported by substantial evidence. While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision is not supported by substantial evidence, there does not exist compelling evidence that Plaintiff is disabled. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The Court, concludes, therefore, that the Commissioner's decision must be reversed and this matter remanded for further factual findings.

### CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g). This matter is remanded for further factual findings, including but not necessarily limited to, reconsideration of Plaintiff's past relevant work.

A separate judgment shall issue.

Dated: March 16, 2017     /s/ Paul L. Maloney
                          PAUL L. MALONEY
                          United States District Judge